# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KENNETH TITTLE**<br>    **D.O.C. # 95230** | : | **DOCKET NO. 13-cv-2722** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **WARDEN, LOUISIANA STATE**<br>**PENITENTIARY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed pro se by participant Kenneth Tittle ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola. N. Burl Cain ("respondent"), warden, has responded [doc. 16].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

#### A. *Conviction and Direct Appeal*

On June 19, 2003, the petitioner was indicted on two counts of aggravated rape relating to two juvenile victims, sisters J.D. and S.C. Doc. 16, att. 2, p. 62. The petitioner had resided with

the victims while in a relationship with their mother. Doc. 1, att. 2, p. 41. On March 29, 2006, a

jury sitting in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, convicted him of two

counts of attempted aggravated rape. Doc. 16, att. 2, pp. 184, 187. He was sentenced on May 24,

2006, to two consecutive forty-five year terms of imprisonment. Doc. 16, att. 5, p. 118.

The petitioner appealed his convictions and sentences to the Louisiana Third Circuit Court

of Appeal. Doc. 1, att. 2, pp. 2–38. He alleged the following assignments of error:

> 1. There was insufficient evidence to support the convictions
> 2. The trial court erred in its instructions to the jury.
> 3. The trial court erred by admitting the 2002 videotaped testimony of J.D.
> 4. The trial court erred in allowing S.C. to testify by closed-circuit television.
> 5. The trial court erred in denying the petitioner's motion for a new trial.
> 6. The sentences imposed were cruel, unusual, and excessive.

*Id.* at 19–37.  The appellate court ruled on the appeal on April 4, 2007. *Id.* at 40. It found that the

trial court erred in admitting the 2002 videotaped testimony of J.D. and concluded that, without

that testimony, there was insufficient evidence to sustain the attempted aggravated rape conviction

relating to S.C. *Id.* at 47–50. It therefore reversed the conviction for the attempted rape of S.C.,

remanding that count for a new trial.[1] *Id.* at 54. It affirmed the conviction and sentence for the

attempted rape of J.D., however, after finding that the assignment relating to S.C.'s closed-circuit

testimony was mooted by reversal of that conviction and determining that the other assignments

of error were meritless.[2] *Id.* at 42–54.

The petitioner next sought review at the Louisiana Supreme Court, renewing his claims of

insufficient evidence, error in the jury instructions, error in admission of J.D.'s video testimony,

---

[1] Assistant District Attorney Carla Sigler stated in 2011 that the state had opted not to retry the petitioner on any charge related to S.C. Doc. 16, att. 9, pp. 59–60.
[2] The Third Circuit declined to consider the assignment of error relating to the motion for a new trial, on the grounds that it found that the record contained no evidence of such a motion. Doc. 1, att. 2, p. 52.

and imposition of an excessive sentence. *Id.* at 56–63; Doc. 1, att. 3, pp. 1–12. The Supreme Court denied review on November 16, 2007. *State v. Tittle*, 967 So.2d 523 (La. 2007) (mem.). It does not appear that the petitioner sought review in the United States Supreme Court. *See* Doc. 1, p. 2.

**B.  State Collateral Review**

On May 14, 2008, the petitioner filed an application for post-conviction relief in the Fourteenth Judicial District. Doc. 1, att. 3, p. 16. As his sole basis for relief he claimed ineffective assistance of counsel by his attorneys during the 2006 trial. *Id.* at 27–31. The petitioner received an evidentiary hearing on October 28, 2009, on this issue with his former attorneys, Ronald Ware ("Ware") and Richard White ("White"), testifying. Doc. 16, att. 7, pp. 278–79; Doc. 16, att. 8, pp. 9–33. At this hearing the petitioner's new attorney raised another claim for collateral review relating to J.D.'s recantation. Doc. 16, att. 8, p. 9. Accordingly the trial court granted the state additional time for investigation. *Id.* at 27–33.

At a hearing on May 25 and May 26, 2011, the trial court heard evidence on J.D.'s recantation.[3] *Id.* at 55–251; Doc. 16, att. 9, pp. 9–13. This claim was then incorporated into the application for post-conviction relief. Doc. 16, att. 7, pp. 252–57. The petitioner argued that J.D.'s recantation should support reversal of his conviction based on her statements at the May 2011 hearing and that his counsel was also ineffective for failing to locate and call as witnesses Rhonda Laughlin and Angel Laughlin, who testified as to J.D.'s lack of credibility at the recantation hearing. *Id.*

The trial court ruled on the application for post-conviction relief on August 12, 2011, finding no merit to the petitioner's claims. Doc. 16, att. 9, pp. 65–72. The petitioner applied to the Third Circuit for a supervisory writ of review, which was denied on November 26, 2012. Doc. 16,

---

[3] The matter was continued for various reasons, including the appointment of new counsel for the petitioner. *See* Doc. 16, att. 8, pp. 2–3 (chronological index of proceedings).

att. 7, p. 271; *State v. Tittle*, 107 So.3d 145 (La. Ct. App. 3d Cir. 2012) (mem.). Lastly the petitioner

filed for review at the Louisiana Supreme Court, which denied same on July 31, 2013. Doc. 16,

att. 7, p. 273; *State ex rel. Tittle v. State*, 118 So.3d 1114 (La. 2013) (mem.).

### C. Habeas Application

The petitioner filed the instant application seeking relief under 28 U.S.C. § 2254 with this

court on September 18, 2013. Doc. 1. As grounds for relief he renews claims from his direct appeal

and application for post-conviction relief, alleging that:[4]

1. The evidence was insufficient to support a conviction of aggravated rape.
2. The trial court erred in its instructions to the jury.
3. The trial court erred in admitting videotaped testimony of J.D.
4. The trial court erred in denying the petitioner's motion for a new trial.
5. The sentences imposed by the trial court were cruel, unusual, and excessive.
6. The petitioner received ineffective assistance of counsel based on his trial attorney's failure to investigate and subpoena Rhonda Laughlin and Angel Laughlin.

Doc. 1, att. 10, p. 11.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody

pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. §

2244(d)(1). This limitation period generally runs from the date that the conviction becomes final.

---

[4] The petitioner raises Claims # 4 and 5 under the heading "Argument of Law." Doc. 1, att. 10, p. 11. However, he fails to brief either claim and instead repeats the arguments from his second and third claims. *Id.* at 17–20. To satisfy the requirement of state court exhaustion, a petitioner's federal habeas claims are limited to the factual and legal allegations use in his state court proceedings. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). Therefore we will still consider Claims #4 and 5, under the assumption that the petitioner renewed all arguments from his direct appeal. Doc. 1, att. 2, pp. 31–37.

*See* 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  *Procedural Default and Exhaustion of State Court Remedies*

Before we proceed to a consideration of the merits of the issues raised in the petition, we must consider the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886).

In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the same legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a prisoner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to

satisfy state procedural requirements results in forfeiture of a prisoner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter, but rather is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

Federal courts of the United States have jurisdiction over writs of habeas corpus on behalf of a person in state custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state district court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based

on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted). In order for a state court's application of federal law to be unreasonable, the application must be more than simply erroneous but rather so incorrect as to be objectively unreasonable. *Dilosa v. Cain*, 279 F.2d 259, 262 (5th Cir. 2002).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner

has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

## III.
### ANALYSIS

As a preliminary matter we review the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If we find that the claim is procedurally viable, we then look to its merits under the general standards set forth in Section II.C.

### A. *Timeliness*

Here we note that the petitioner's conviction became final 90 days after the judgment of the Louisiana Supreme Court, when his time for seeking review by the U.S. Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing his § 2254 petition began running on February 14, 2008. It was suspended by his application for post-conviction relief on May 14, 2008, after 90 days. The clock began running again when the Louisiana Supreme Court denied review of this application on July 31, 2013, and ran for another 67 days until the filing of the instant application on September 18, 2013. Therefore a total of 157 days were counted toward the one-year limit, meaning that the instant application is timely under § 2244(d).

### B. *Exhaustion of State Court Remedies and Procedural Default*

#### 1. *Exhaustion of state court remedies*

The petitioner renews five claims from his direct appeal and one claim from his application for post-conviction relief. His claim relating to the motion for a new trial was only raised in his direct appeal before the Third Circuit. It was not presented to the Louisiana Supreme Court for review. Therefore the petitioner has not exhausted his state court remedies for this claim.

All other claims were properly presented to the Louisiana Supreme Court. The petitioner does not introduce entirely new factual allegations or legal theories in his presentation of these

claims. Therefore we find that he has exhausted his state court remedies for the remaining claims in the instant petition.

### 2. *Procedural default*

Applying the standards described above, we now consider whether grounds for procedural default exist. Here the last adjudications on the merits came from the Third Circuit on direct appeal and the Fourteenth Judicial District on the application for post-conviction relief. Therefore we look to their decisions.

We look first to the claims already presented to the Louisiana Supreme Court. We have already found that the petitioner exhausted all state court remedies, and so technical procedural default cannot apply here. We also find that no state procedural rules were cited as a basis for judgment on any of the petitioner's claims renewed here. Therefore there is no basis for applying traditional procedural default. Accordingly, none of these claims are barred by the doctrine of procedural default.

We look next to the petitioner's claim relating to the motion for a new trial. In Louisiana, a party seeking review from the state supreme court must apply for a writ of certiorari within 30 days of the court of appeal's transmission of the notice of judgment. LA. C. CIV. P. art. 2166(A). Accordingly, the petitioner is now time-barred from seeking review of this claim from his 2007 appeal. He would also be barred from raising this claim in an application for post-conviction relief, which generally must be filed within two years of final judgment. LA. C. CRIM. P. art. 930.8(A). Therefore the claim is now subject to technical procedural default.

A procedural default may still be excused, however, if the petitioner can show cause and resulting prejudice for his default or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900,

902 (5th Cir. 1997). To establish cause, the petitioner must show that some external, objective factor impeded his efforts to raise the claim in a procedurally proper manner. A finding of fundamental miscarriage of justice, on the other hand, depends on a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986). The factual innocence standard means that the petitioner must show a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997).

Here we see no basis for such cause, as Tittle was able to seek timely review of other claims from his appeal to the Third Circuit. The post-trial developments, including the recantation (discussed further infra, Claim 6) by J.D. and the reversal of the conviction as to S.C., however, create a fair probability that reasonable doubt could have been found on the remaining conviction. Accordingly we are inclined to excuse the procedural default under the fundamental miscarriage standard. We will therefore consider all constitutional claims raised by the petitioner in the instant application.

### C. *Substantive Analysis*

Having determined that all claims that can be heard by this court under § 2254, we will now consider each one by first ascertaining the appropriate standard of review and then applying that standard to the merits of the argument.

#### 1. *Sufficiency of the evidence*

The petitioner first contends that his constitutional rights were violated by the conviction of attempted aggravated rape, for which he alleges there was insufficient evidence. A sufficiency of evidence claim is a mixed question of law and fact. *Hernandez v. Warden, LA State Penitentiary*, 2014 WL 2169128, *9 (W.D. La. May 23, 2014). We therefore review the state court's dismissal

of this claim for contrariness to clearly established federal law or unreasonable application of that law.

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). We decide such claims by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

Here the petitioner was convicted of the attempted aggravated rape of J.D.  Under Louisiana law, rape includes nonconsensual vaginal sexual intercourse. LA. REV. STAT. § 14:41(A). Aggravated rape was then defined in pertinent part to include "where the . . . vaginal sexual intercourse is deemed to be without lawful consent of the victim" under certain enumerated circumstances, including "[w]hen the victim is under the age of thirteen years."[5] LA. REV. STAT. § 14:42(A). Attempt is defined as follows:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

LA. REV. STAT. § 14:27(A). The state was thus required to prove here that the petitioner had specific intent[6] to have vaginal sexual intercourse with a person under the age of thirteen and that he did or omitted an act towards that goal. Here the age of J.D. is not disputed by the petitioner.

---

[5] The pertinent parts of the statute have not changed in any substantive manner, except to redefine aggravated rape as "first degree rape." *See* SEX OFFENSES, 2015 La. Sess. Law Serv. Act 256 (S.B. 117) (WEST).

[6] Specific criminal intent is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LA. REV. STAT. § 14:10(1).

Her birthdate was provided on the indictment and verdict sheet and shows that she would have been under thirteen at the time of the offense. Doc. 16, att. 2, pp. 62, 187. We therefore focus on whether there was sufficient evidence at trial, including the 2002 videotaped testimony later deemed inadmissible,[7] to sustain the other elements of the conviction.

The petitioner contends that the evidence was insufficient because of inconsistencies in the testimony of S.C. and J.D. and the fact that there was no physical evidence of rape. He cites numerous Louisiana cases where the testimony of child rape victims was corroborated by medical evidence, DNA, or eyewitness testimony. Doc. 1, att. 10, pp. 13–15. However, as the respondent indicates, it is well settled under Louisiana law that victim testimony alone is sufficient to establish the elements of a sexual offense. *State v. Schexnaider*, 852 So.2d 450, 457 (La. Ct. App. 3d Cir. 2003). The credibility of the victim's testimony is a matter of discretion for the trier of fact, "who may accept or reject, in whole or in part, the testimony of any witness." *Id.* (quoting *State v. Williams*, 786 So.2d 805, 810 (La. Ct. App. 5th Cir. 2001).

At trial J.D. testified that the petitioner vaginally penetrated her on two separate occasions. Doc. 16, att. 4, pp. 181–83. However, other witnesses gave accounts of different disclosures from J.D. over the preceding five and a half years. Margaret Bertrand, a family friend, testified that J.D. had been sent to live with her at some point in 2000 when J.D. would have been between the ages of nine and ten. Doc. 16, att. 3, p. 96; *see* Doc. 16, att. 2, p. 62 (birthdate of J.D.). Bertrand stated that J.D. first disclosed that the petitioner "tried to French kiss her" and would touch her "where [she] wasn't supposed to be touched." Doc. 16, att. 3, p. 97. Kristina Gott, a Calcasieu Parish child

---

[7] In federal habeas review of evidence sufficiency we may examine the entire record, including evidence later declared inadmissible on appeal, so long as the admission of that evidence did not create any constitutional problems. *Pemberton v. Collins*, 991 F.2d 1218, 1222–23 (5th Cir. 1993). Here the videotaped testimony was excluded pursuant to La. Rev. Stat. 15:440.5(A)(6), which requires that the person conducting or supervising the videotaped testimony be available at the proceeding. We do not find any constitutional issues raised within this requirement or breached by admission of the videotape. Accordingly we will consider the testimony under this claim, despite the Third Circuit's declaration of inadmissibility.

protection worker who investigated the allegations in September 2000 testified that J.D. told her that the petitioner "had come into a room where she was, a closet where she was sleeping, and touched her on her leg and it hurt and that she was scared." *Id.* at 101–03. Another Calcasieu Parish child protection worker, Sharon Cummings, testified that she had interviewed J.D. in October 2000. Doc. 16, att. 4, pp. 121–22. At that time J.D. said that the petitioner had kissed her and attempted to rape her. *Id.* at 124–27.

Jolyn Doland, a social worker who testified for the state, was accepted by the court as an expert on forensic interviewing and child development. *Id.* at 35. She stated that a child who had been the victim of sexual abuse might still offer inconsistent accounts, particularly if there were lapses of time between disclosures. *Id.* at 42–43. She described her interview of J.D. at the Children's Advocacy Center in Lake Charles in October 2000 which was played at trial. *Id.* at 44–48. Jada Smith, a truancy officer from the Terrebonne Parish Children's Advocacy Center, interviewed J.D. there in 2002. *Id.* at 76–83. Video of this interview was also played at trial. *Id.* at 77–78.

Reviewing the above, we cannot find that the jury's conclusions were unreasonable. Even without the contents of the Children's Advocacy Center videos, which were not transcribed for the record, we find that J.D.'s statements provided sufficient grounds for concluding that the petitioner had at least attempted to have vaginal sexual intercourse with her. The nature of the act leaves little room for concluding that he could have done so without specific intent. The jury had explanation from an expert witness that could excuse the inconsistencies in J.D.'s account over time. It also had her testimony at trial and two videotaped interviews, which it apparently found more compelling than her prior inconsistent statements. Thus, under our deferential standard, we do not find grounds to overturn its conclusions on credibility. There was sufficient evidence then to

sustain the conviction of attempted aggravated rape relating to J.D. Accordingly, this claim offers no basis for federal habeas relief.

### 2. Error in jury instructions

The petitioner's next assignment of error relates to the trial judge's instruction to the jury on intent: "**Intent is a question of fact which may be inferred from the circumstances. You may infer that the defendant intended the natural and probable consequences of his act**." Doc. 16, att. 2, pp. 173–74. The petitioner claims that this instructions impermissibly shifted the burden of proof, violating his right to due process and a fair trial under the Fifth and Sixth Amendments. U.S. CONST. amends. V & VI (as incorporated, *id.* at amend. XIV). Because this question involves application of a rule of law to uncontroverted facts, we review it as a mixed question of law and fact. *Ornelas v. United States*, 116 S.Ct. 1657, 1662 (1996).

In *Sandstrom v. Montana*,[8] the Supreme Court held that a trial court erred in instructing a jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." 99 S.Ct. 2450, 2452 (1979). The Court found that this instruction could be read as either a burden-shifting or conclusive presumption, both of which would impermissibly relieve the state of its burden and invade the fact-finding role of the jury. *Id.* at 2459.

The bar against certain presumptions does not invalidate all inferences, however. As the respondent notes, the Supreme Court recognizes that jury instructions may still include permissive inferences without "necessarily implicat[ing] the concerns of *Sandstrom*." *Francis v. Franklin*, 105 S.Ct. 1965, 1971 (1985). A permissive inference is one that "still requires the state to convince

---

[8] The petitioner relies on two Supreme Court cases, *Sullivan v. Louisiana*, 113 S.Ct. 2078 (1992) and *Cage v. Louisiana*, 111 S.Ct. 328 (1990). However, these cases both dealt with jury instructions that unconstitutionally mitigated the definition of reasonable doubt. *Sullivan*, 113 S.Ct. at 2080; *Cage*, 111 S.Ct. at 329. We find them inapposite to the arguments set forth by the petitioner here. Instead we see fit to analyze his case under *Sandstrom*, which more directly addresses the issue of burden-shifting instructions. 99 S.Ct. at 2459–60.

the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.* The Fifth Circuit has ruled in favor of inferences similar to the one used at the petitioner's trial, finding in *Dupuy v. Cain* that it was acceptable to instruct a jury that "it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted by him . . . ." 201 F.3d 582, 587–88 (5th Cir. 2000).

We are persuaded here that the state court findings upholding the jury instructions were consistent with federal law. The jury instructions here are distinguishable from *Sandstrom* because they specifically note an inference, which can only arise after the state has proven all of the facts involved. We also note that the language of the instruction is consistently permissive, offering that the jury "may" apply this inference and reminding the jury of its ultimate role/authority as finder of fact to determine intent as a factual issue. We therefore find that the jury instructions did not violate the petitioner's constitutional rights, and so this claim offers no basis for federal habeas relief.

### 3. *Error in admitting videotaped testimony*

The petitioner next claims that admission of the videotaped testimony of J.D. from 2002 was in error due to the prosecution's failure to establish a proper foundation. The Third Circuit agreed, holding that the prosecution was inadmissible under the Louisiana Rules of Evidence because it found that the witness who introduced the tape did not conduct or supervise the interview.[9] Doc. 1, att. 2, p. 47 (citing La. Rev. Stat. § 15:440.5(A)). However, it concluded that the admission was only harmless error as to the conviction for attempted aggravated rape of J.D. *Id.* at 48–50. The petitioner renews his objection that the alleged error was highly prejudicial. Such a claim implicates a violation of the petitioner's constitutional right to due process under the

---

[9] The state apparently conceded this point on appeal. Doc. 1, att. 2, p. 47.

Fourteenth Amendment. *Bigby v. Cockrell*, 340 F.3d 259, 271–72 (5th Cir. 2003) (citing U.S. CONST. amend. XIV).

Normally our review of this issue would be limited to the state court's conclusions of law based on established facts in the record. However, our reading of the record reveals clear error in the facts supporting those conclusions. In 2002 J.D. and S.C. were both interviewed at Children's Advocacy Centers in the parishes in which they were residing.[10] Doc. 16, att. 4, pp. 84–85. The interview of J.D. took place in Terrebonne Parish and was introduced by the testimony of the interviewer, Jada Smith ("Smith"). *Id.* at 76–78. The interview of S.C. took place in Lafayette and was introduced by the testimony of Detective Mike Primeaux ("Primeaux"), lead investigator on the case, who had observed the interview. *Id.* at 95–99.

At the petitioner's direct appeal the Third Circuit ruled that Primeaux's testimony was insufficient to establish admissibility for the 2002 videotaped testimony of J.D. because he neither conducted nor supervised the interview. Doc. 1, att. 2, p. 47 (citing LA. REV. STAT. § 15:440.5(A)). However, Primeaux did not introduce any videotaped interviews of J.D. Doc. 16, att. 4, pp. 84–121; *see also* Doc. 16, att. 3, pp. 193–222 (Primeaux's testimony as witness on the investigation). The 2002 interview of J.D. was introduced by Smith, who conducted it and whose testimony thus conformed with the relevant subsection of § 15:440.5(A).[11] *Compare* Doc. 1, att. 2, p. 47 *with* Doc. 16, att. 4, pp. 76–78. The factual basis of the Third Circuit's ruling was therefore clearly erroneous.

Based on our factual findings, we cannot agree with the Third Circuit's conclusion that the 2002 interview of J.D. was admitted in error. Having found that there was no error, we will not

---

[10] These interviews took place in April, though J.D.'s tape was misdated as February 2002. *Compare* Doc. 16, att. 4, p. 84 *with id.* at 77–78.

[11] The only other videotaped interview of J.D. played at trial was introduced by Jolyn Doland, who also conducted the interview. Doc. 16, att. 4, pp. 5, 44–48. Therefore this exhibit also conformed with § 15:440.5(A)(6).

determine whether the petitioner was prejudiced by the admission of this evidence. This claim thus offers no basis for federal habeas relief.

### 4. *Error in denying the petitioner's motion for a new trial*

The petitioner next contends that the trial court erred when it denied his motion for a new trial or a mistrial, based on the petitioner's challenge to the allowance of testimony by closed circuit television for S.C. Doc. 1, att. 2, pp. 31–33. Such a claim is cognizable under federal habeas review if it alleges a due process violation. *See Duval v. Cain*, 116 Fed. App'x 475, 476 (5th Cir. 2004) (unpublished).

The Third Circuit declined to review this claim because it could not locate any such motion. After examining the record we agree.[12] Our review under § 2254 does not encompass the due process implications of denying motions that were never made. Accordingly, we find that this claim offers no basis for federal habeas relief.

### 5. *The sentences imposed by the trial court were cruel, unusual, and excessive*

The petitioner alleges that his sentence was cruel, unusual, and excessive, in violation of the Eighth Amendment's ban on cruel and unusual punishment. U.S. CONST. amend. VIII. He challenges both the length of the sentences as well as the court's order that the run consecutively rather than concurrently. However, the latter part of the claim was rendered moot by the Third Circuit's reversal of the conviction and sentence relating to S.C. Doc. 1, att. 2, p. 54; *see* Doc. 16, att. 9, pp. 59–60 (state's admission that the petitioner was never retried on that count). Therefore we consider only the imposition of a 45 year sentence for the attempted aggravated rape of J.D.

---

[12] We do see a motion for a mistrial on the basis of the admission of 2002 S.C.'s videotaped testimony. Doc. 16, att. 4, p. 107. However, this does not comport with the grounds for relief claimed by the petitioner. *See* Doc. 1, att. 2, pp. 31–33.

Seeing no dispute as to the record, we review this claim as a mixed question of law and fact. *Ornelas*, 116 S.Ct. at 1662.

A sentence for a term of years violates the Eighth Amendment if it is grossly disproportionate to the offense. *Lockyer v. Andrade*, 123 S.Ct. 1166, 1173 (2003). The Supreme Court has stated that this will only be found in "exceedingly rare" and "extreme" cases. *Id.* (citing *Harmelin v. Michigan*, 111 S.Ct. 2680, 2705 (1991) (Kennedy, J., concurring)). Multiple factors may be considered, including the sentence imposed for the same crime in other jurisdictions and the gravity of the offense compared to the harshness of the penalty. *Ewing v. California*, 123 S.Ct. 1179, 1186–89 (2003).

At sentencing the court emphasized the age of the victim as well as the psychological damage allegedly inflicted by the petitioner. Doc. 16, att. 5, pp. 117–18. As the Third Circuit noted, there is a wide range of sentences for attempted aggravated rape in Louisiana. It cited multiple examples of forty-five and fifty year sentences for this offense in surrounding jurisdictions, including 45 years where a child victim had a trust relationship with the offender and 50 years where the adult victim suffered extensive psychological harm as a result of the attempt. Doc. 1, att. 2, p. 53 (citing *State v. McLelland*, 860 So.2d 31 (La. Ct. App. 5th Cir. 2003), *State v. Smith*, 842 So.2d 1153 (La. Ct. App. 4th Cir. 2003)). We therefore find some precedent for this length of sentence for the same offense, particularly with the aggravating factors relied upon by the trial court.

We also observe the seriousness of the offense: the petitioner was convicted here of attempting to have sexual intercourse with a child under the age of 13. The repugnance reflected in the length of his sentence is understandable. Accordingly, we cannot find that the sentence

imposed here is one of the "exceedingly rare" cases of gross disproportionality implicating the Eighth Amendment. This claim therefore offers no basis for federal habeas relief.

### 6. *The petitioner received ineffective assistance of counsel based on his trial attorneys' failure to investigate and call Rhonda Laughlin and Angel Laughlin.*

Finally, the petitioner claims that he received ineffective assistance of counsel at trial in violation of his constitutional right to an attorney. U.S. CONST. amend. VI (as incorporated, *see id.* at amend. XIV. He asserts that his attorneys' performance was deficient for his failure to investigate and call two material witnesses on the issue of J.D.'s credibility.  Finding no dispute as to the parts of the record at issue here, we review this question as a mixed one of law and fact. *Ornelas*, 116 S.Ct. at 1662.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their reviews of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (internal quotations and alterations omitted). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

The petitioner's claim here relates to the alleged failure of his attorneys to adequately investigate Rhonda and Angel Laughlin, sisters of J.D., as impeachment witnesses on J.D.'s credibility. As the respondent concedes, neither one was called as a witness at the petitioner's trial in 2006. *See* Doc. 16, att. 3, p. 11; Doc. 16, att. 4, p. 15; *Id.* at 169 (witness lists from trial transcript). However, both testified at the recantation hearing in 2011. Rhonda was called as a witness by the defense. Doc. 16, att. 8, p. 65. In addition to describing J.D.'s recantation, she stated that she had never seen the petitioner do anything inappropriate with J.D. during the year she had lived with them. *Id.* at 66–67, 73–74. She also described J.D. as an "erratic" and "angry" child who "lied a lot," and stated that these character traits existed before the petitioner joined the household. *Id.* at 69. Angel was called as a witness by the state. *Id.* at 188. She testified that J.D. lived with her briefly when J.D. was nine years old and Angel was around twenty years old, and that J.D. lied habitually during that time. *Id.* at 190–91. Angel also testified that J.D. suffered neglect at the hands of their mother and that the recantation was probably a lie. *Id.* at 190–93.

Ware, the petitioner's lead trial attorney, testified at the 2009 evidentiary hearing on the ineffective assistance claim that he had "made some effort" to contact a prospective witness who formerly resided with the victims and whom he believed to be their older sister. *Id.* at 17. He was unsuccessful in reaching her, which he blamed in part on their mother's failure to make the witness available. *See id.* We accept the petitioner's contention that this witness was Rhonda.[13] *See* Doc. 1, att. 10, p. 29.

At the evidentiary hearing Ware and his co-counsel, White, also testified to their own heavy caseloads and their office's dearth of investigators. Doc. 16, att. 8, pp. 19–20, 25. White stated,

---

[13] Co-counsel White stated that the witness was sought to testify to the petitioner's access to the victims. Doc. 16, att. 8, p. 26. Angel testified that she (Angel) had been kicked out of the house by their mother several years before the abuse occurred. *Id.* at 190–92. Meanwhile, Rhonda resided with both the victims and the petitioner. *Id.* at 66–67, 73–74. Rhonda is, therefore, the only one who could have reasonably testified to the petitioner's access to the victims.

"Were we overworked? Yes. Did we have too many cases? Yes." *Id.* at 25. He then added, "I thought we tried a pretty good case, but if anything was missing, it was not being able to find that third witness. So yeah, I mean, had we had greater resources, had we had more investigators, we might've been able to do that." *Id.* He also stated that they declined to seek a continuance in order to locate the witness because they were not sure if her testimony would even be favorable. *Id.* at 26.

It appears, then, that Rhonda and Angel's testimonies could have been relevant and perhaps favorable to the petitioner.[14] However, only Rhonda appears to have been known to the defense at the time of trial. Their mother, who  appears to have blocked her from testifying, continued to live with the petitioner after the sexual abuse allegations were made and remained in contact with him after he was jailed. Doc. 16, att. 3, pp. 35–36; Doc. 16, att. 8, p. 193. Therefore we are not persuaded that Rhonda's testimony would have been as favorable to the petitioner in 2006 as it was in 2009. It is still regrettable that neither Rhonda nor Angel could be located; however, we cannot find that his attorneys' efforts to do so fell below an objective standard of reasonableness.

The record does not detail what steps were actually taken to locate Rhonda. Instead it only shows that the attorneys attempted to do so and that White believed that they might have been successful if they had had more resources. We see nothing in the case law to suggest that effective assistance requires that an office have a certain number of investigators. Mindful of the caution regarding hindsight, we decline to judge the failure to seek a continuance harshly, given that the

---

[14] Under this claim, the petitioner also refers to several post-trial developments. Doc. 1, att. 10, pp. 31–34. He also cites J.D.'s own admission from the recantation hearing that she was treated for schizophrenia and bipolar disorder, apparently after entering the state's custody. *Id.* at 32; Doc. 16, att. 8, p. 84. These matters are plainly outside of the scope of matters to which Rhonda might have testified at trial. We therefore decline to consider them in our determination of her significance to the proceedings. The matters within her knowledge at the time of trial, as reflected in her testimony from the evidentiary hearing, nonetheless provide strong support for her significance to the petitioner's case.

defense appeared to have no indication that Rhonda's testimony would be favorable. Therefore we cannot hold that the efforts regarding Rhonda fell below an objective standard of reasonableness.

As for Angel, there is no indication that either the petitioner or his attorneys knew of her existence at the time of trial, let alone that she might have knowledge of relevant information. We thus have no basis for finding that the failure to discover her was unreasonable. Finally, we repeat the trial court's admonition that the fault for failure to identify material witnesses or raise issues relating to J.D.'s credibility lies in part with the petitioner, who was personally familiar with the family and obligated to assist in his own defense. Doc. 16, att. 9, p. 67.

We do not take lightly the difference that these two impeachment witnesses might have made to the jury's determinations on J.D.'s credibility; however, our review limits us to the question of whether the failure to locate Rhonda and Angel was so deficient that the petitioner was denied his constitutional right to counsel. For the reasons stated above, we cannot agree that it was. This claim therefore offers no basis for federal habeas relief.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 1st day of December, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE